## Kockritz et al. v. City of Henderson.

(Decided June 22, 1937.)

HENSON & TAYLOR for appellants.
JOHN L. DORSEY for appellee.
CLAY & CLAY for interpleader.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

In August, 1936, an ordinance was duly adopted by the common council of Henderson, a city of the third class with a population of less than 15,000, authorizing the issuance and sale of bonds to fund a floating indebtedness of approximately $78,000.

Thereafter the city instituted this action against a taxpayer of the city in the Henderson circuit court seeking judicial approval of the proposed bond issue. Later another taxpayer for and on behalf of himself and all other citizens and taxpayers of the city intervened and joined in the prayer of the taxpayer who was made defendant in the petition asking that approval of the issuance and sale of the bonds be refused and withheld.

This appeal is from a judgment approving and permitting the issuance and sale of the bonds to the extent and amount of $74,186.17. It is alleged in substance that the only indebtedness of the city in addition to that proposed to be funded is a bonded indebtedness

in the sum of $356,000 which was incurred prior to the adoption of the present Constitution. The items going to make up the indebtedness proposed to be funded are as follows: Henderson National Bank, note, $6,-956.05; First National Bank, note, $21,000; L. J. Cooper, note, $2,350.96; Registration and Management Corporation, note, $462.63; Farmers Bank & Trust Company, note, $1,400; interest due on the above notes $1,931.60; outstanding checks or warrants held by commissioners but not paid, $43,987.45; that this indebtedness was incurred at various times over a period of about 5 years. The petition sets out at length and with particularity the various items of indebtedness incurred, the years in which they were incurred and the assessed value of the property subject to taxation and other sources of revenue for the various years and alleges that the floating indebtedness and outstanding bonded indebtedness of the city does not exceed 5 per cent. of the value of the taxable property in the city estimated by the last assessment previous to the enactment of the ordinance for the funding of the floating indebtedness; that items of indebtedness proposed to be funded when incurred were valid and when added to the other indebtedness incurred during such year, did not exceed the revenue that might reasonably have been anticipated under the levies made for the year or the amounts that would have been realized from levies that might have legally been made for such years.

While the answers of the taxpayers admit many of the allegations respecting the value of the taxable property in the city as shown by the assessments, etc., they deny the material allegations relating to the validity of the floating indebtedness. The deposition of the mayor of the city was taken by appellee, but this related mostly to conditions brought about by the financial depression which resulted in failure and loss of anticipated revenues. The evidence also discloses very large delinquencies in payment of taxes, light bills, water rents, etc., the light and water plants being municipally owned. The mayor testified that the city's officials had been diligent in their efforts to collect from delinquents and had recovered judgments against some, but his evidence indicates that they had been somewhat indulgent when it came to the matter of selling property to satisfy tax liens.

During the taking of this deposition counsel for the city and counsel for the defendant taxpayer entered into a stipulation of facts. This stipulation shows when the indebtedness represented by the notes referred to was incurred and that the indebtedness incurred was within the limits fixed by both sections 157 and 158 of the Constitution when account is taken of the amount that the city might reasonably have anticipated under the levies made and the revenues reasonably anticipated from other sources including the net revenue from the utility plants owned and operated by the city. It also shows the amount of the floating indebtedness represented by outstanding checks and warrants of the city that were incurred in each of the years involved. It also shows the amount of revenues that would have been produced under the levies made for the various years, and the amount that would have been realized under levies that might have been made, it appearing that in none of the years did the city make the maximum levy permitted by the Constitution. In fact, it sustains the allegations of the petition in every material particular, as to indebtedness the chancellor found to be valid.

Beginning with Vaughn v. City of Corbin et al., 217 Ky. 521, 289 S. W. 1104, this court has consistently held that a valid floating indebtedness of a county, city or other taxing unit may be funded and that in determining the validity of the indebtedness under section 157 of the Constitution, the authorities or courts are not confined to the revenue actually levied for any year, but may take into account any additional levy that might have been made under that section. Following the opinion in that case and until the enactment of sections 186c-6, 186c-7, of the Statutes, bonds to float funded indebtedness were issued and sold in some instances by counties, cities, etc., without judicial approval where purchasers were willing to take the bonds under such circumstances; and in actions brought to test the validity of such funding bonds, the burden was upon the party opposing the bond issue to show the invalidity of the indebtedness proposed to be funded. But under the first section mentioned it was made unlawful to issue such bonds without the approval of a court of competent jurisdiction and under the latter the burden is imposed upon the county, city, municipality, or other taxing district to establish that the

indebtedness proposed to be funded is within the limits fixed by sections 157 and 158 of the Constitution. In Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961, 963, it was said with reference to section 186c-7 of the Statutes:

"Among the ways that a municipality may prove the validity of a particular indebtedness is by showing that it and its other indebtedness did not exceed the revenue, and income which it provided, or might have provided, for the year under the Constitution (Hogan v. Lee Fiscal Court, 235 Ky. 100, 29 S. W. (2d) 611), or by showing that at the time the particular indebtedness was incurred, it, together with other binding obligations theretofore incurred, including necessary governmental expense, did not exceed the revenue and income which the municipality provided, or might have provided, under the Constitution."

The quoted excerpt from that opinion clearly and succinctly sets forth the nature and character of the evidence required to meet the burden placed upon municipalities of establishing the validity of a floating indebtedness.

Some more recent opinions have said in words or effect that under the statute, it was incumbent upon the municipality to establish the validity of each item of indebtedness proposed to be funded thus leaving room for the inference that the municipality must establish that each item of such indebtedness was incurred for some legitimate purpose. But as indicated in the Randolph opinion, the burden is met by showing that the indebtedness or the different items thereof, when incurred, were within the limits prescribed by sections 157 and 158 of the Constitution.

It is urged by the intervening taxpayer that courts look with disfavor upon suits of this character which are too friendly in their nature, and a taxpayer is selected as defendant or to intervene merely to agree and assent to the allegations and claims of the municipality. Exceptions were filed to the stipulation of facts on that ground and it is made a subject of criticism in brief by counsel for the intervening taxpayer. Ordinarily, such stipulations in suits of this character are looked upon with suspicion by the court,

but in this instance it is shown by the stipulation that the judge of the Henderson circuit court was invited to be and was present and that the stipulation was entered into after the production of the records of the city of Henderson; and it is further shown that one of the attorneys for the intervening taxpayer was also present and this is not denied. In such circumstances there is no room for a charge of collusion or bad faith, and we see no reason why a stipulation made in such circumstances is not entitled to as much faith and credit as would be given the long deposition or volume of evidence that would be required to show the facts established by the records.

It is further urged by counsel for appellant that revenue derived from the municipally owned plants could not be considered in anticipated revenue for any of the years because it is not shown that the city authorities could determine with any degree of certainty the amount of revenue that would be realized from that source, but the evidence does show the net revenues derived from these sources for each of the 5 years and in none of these years was the net revenue from these plants less than $60,000 and the average was a little over that sum. In the conduct of fiscal affairs of a municipality, the city authorities may take into consideration fixed revenue that may be reasonably anticipated and under the evidence the city authorities were authorized to anticipate revenues that might reasonably be anticipated to come from municipally owned utilities.

On the record as a whole, it is our conclusion that the city has met the burden as indicated in Randolph v. Shelby County, supra, to the extent determined and fixed by the judgment, and therefore the judgment should be and is affirmed.